UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL PAUL PUZEY,

        Plaintiff,

   v.                           Civil Action No. 21-2096 (CRC)

DEPARTMENT OF JUSTICE, et al.,

        Defendants.

**COMBINED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ...................................................................................................... iii

Background ...................................................................................................................... 2

    I.      Plaintiff's Request to the DEA, Dated March 21, 2021 ........................................ 3

    II.     Plaintiff's Request to ATF, Dated March 21, 2021 ............................................. 4

    III.   Plaintiff's Request to the FBI, Dated March 21, 2021 ......................................... 5

    IV.   Plaintiff's Request to the Department of Justice, Dated March 21, 2021 .............. 6

    V.     Plaintiff Files This Lawsuit ................................................................................. 7

LEGAL STANDARD ...................................................................................................... 9

    I.      Defendants Conducted Reasonable Searches ..................................................... 10

           A.    ATF .................................................................................................... 11

           B.    DEA ................................................................................................... 12

           C.    FBI .................................................................................................... 13

           D.    The Executive Office .......................................................................... 14

    II.     The FBI Properly Redacted Certain Information Pursuant to Exemptions to FOIA and the Privacy Act ......................................................................................... 16

           A.    Privacy Act Exemption (j)(2) ............................................................. 16

           B.    FOIA Exemption 6 ............................................................................ 17

           C.    FOIA Exemption 7(C) ....................................................................... 19

           D.    FOIA Exemption 7(D) ....................................................................... 22

           E.    FOIA Exemption 7(E) ....................................................................... 23

    III.   The Executive Office ........................................................................................ 24

           A.    Privacy Act Exemption (j)(2) ............................................................. 24

           B.    FOIA Exemption 3 ............................................................................ 25

           C.    FOIA Exemption 5 ............................................................................ 27

      D.      FOIA Exemptions 6 and 7(C) ................................................................ 30

      E.      FOIA Exemption 7(D) ......................................................................... 32

      F.      FOIA Exemption 7(E) .......................................................................... 32

      G.      FOIA Exemption 7(F) .......................................................................... 33

   IV.     Plaintiff's Arguments About Exemptions Are Meritless..................................... 34

    V.     Segregability ................................................................................................... 37

Conclusion ................................................................................................................... 38

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. Fed. Bureau of Prisons*,
    Civ. A. No. 20-2320 (RBW), 2022 WL 17250300 (D.D.C. Nov. 28) ............................ 34, 35

*Adionser v. Dep't of Just.*,
    811 F. Supp. 2d 284 (D.D.C. 2011) .................................................................................. 29

*Amuso v. Dep't of Just.*,
    600 F. Supp. 2d 78 (D.D.C. 2009) .................................................................................... 18

*Anand v. Dep't of Health & Human Servs., Civ. A. No.*
    2023 WL 2646815 (D.D.C. Mar. 27, 2023) ................................................................ 26, 34

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................................... 9

*Associated Press v. Dep't of Def.*,
    549 F.3d 62 (2d Cir. 2008) ............................................................................................... 18

*Beck v. Dep't of Just.*,
    997 F.2d 1489 (D.C. Cir. 1993) ......................................................................... 17, 18, 19

*Billington v. Dep't. of Just.*,
    233 F.3d 581 (D.C. Cir. 2000) ..................................................................................... 23, 32

*Birch v. U.S. Postal Serv.*,
    803 F.2d 1206 (D.C. Cir. 1986) ....................................................................................... 22

*Blackwell v. FBI*,
    646 F.3d 37 (D.C. Cir. 2011) ...................................................................................... 24, 31

*Blanton v. Dep't of Just.*,
    63 F. Supp. 2d 35 (D.D.C. 1999) ........................................................................ 21, 22, 32

*Brayton v. Off. of U.S. Trade Rep.*,
    641 F.3d 521 (D.C. Cir. 2011) ........................................................................................... 9

*Brown v. FBI*,
    Civ. A. No. 21-1639 (RBW), 2023 WL 5333210 (D.D.C. Aug. 18, 2023) ........................ 31

*BuzzFeed Inc. v. Dep't of Just.*,
    Civ. A. No. 19-1977 (EGS), 2023 WL 6847008 (D.D.C. Oct. 17, 2023) ........................... 33

*Canning v. Dep't of Just.*,
    Civ. A. No. 11-1295 (GK), 2017 WL 2438765 (D.D.C. June 5, 2017) ............................. 23

*Carter v. Dep't of Com.*,
    830 F.2d 388 (D.C. Cir. 1987) ......................................................................................... 18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................................................................................... 9

*Citizens for Resp. & Ethics in Wash. v. Dep't of Lab.*,
478 F. Supp. 2d 77 (D.D.C. 2007) ................................................................ 10

*Citizens United v. Dep't of State*,
Civ. A. No. 18-1862 (RDM), 2021 WL 3268385 (D.D.C. July 29, 2021) ........... 37

*Clarke v. Dep't of Just.*,
Civ. A. No. 18-2192 (ACR), 2023 WL 2536264 (D.D.C. Mar. 13, 2023) ........... 26

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ..................................................................... 29

*Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*,
554 F.3d 1046 (D.C. Cir. 2009) ................................................................... 18

*CREW v. Dep't of Just.*,
870 F. Supp. 2d 70 (D.D.C. 2012) ............................................................... 24

*Cullen v. Dep't of Homeland Sec.*,
Civ. A. No. 20-0113 (TJK), 2023 WL 5607425, at *9 (D.D.C. Aug. 30, 2023) ........ 25

*Curry v. FBI*,
Civ. A. No. 18-0439 (EGS), 2024 WL 21466 (D.D.C. Jan. 2, 2024) ................. 24

*Dalal v. Dep't of Just.*,
643 F. Supp. 3d 33 (D.D.C. 2022) .................................................... 17, 22-23, 25

*Dale v. DEA*,
Civ. A. No. 20-1248 (EGS), 2022 WL 3910502 (D.D.C. Aug. 31, 2022) ........... 27

*Davis v. Exec. Off. for U.S. Att'ys*,
Civ. A. No. 18-0086 (CRC), 2024 WL 2701067 (D.D.C. Apr. 4, 2024) ............. 15

*Dep't of Just. v. Landano*,
508 U.S. 165 (1993) ..................................................................................... 22

*Dep't of Just. v. Reps. Comm. for Freedom of Press*,
489 U.S. 749 (1989) ..................................................................................... 18

*Dep't of State v. Wash. Post Co.*,
456 U.S. 595 (1982) ..................................................................................... 17

*DiBacco v. U.S. Army*,
795 F.3d 178 (D.C. Cir. 2015) ..................................................................... 11

*Fed. Trade Comm'n v. Match Grp., Inc.*,
Misc. No. 22-0054 (RJL/GMH), 2024 WL 1509180 (D.D.C. Mar. 12, 2024) ........ 27-28

iv

*Garza v. U.S. Marshals Serv.*,
  Civ. A. No. 16-0976, 2018 WL 4680205 (D.D.C. Sept. 28, 2018) ........................................ 34

*Gatson v. FBI*,
  Civ. A. No. 15-5068, 2017 WL 3783696 (D.N.J. Aug. 31, 2017) ......................................... 16

*Groenendal v. Exec. Off. for U.S. Att'ys*,
  Civ. A. No. 20-1030 (DLF), 2024 WL 1299333 (D.D.C. Mar. 27, 2024) ................. 19, 22, 31

*Guarascio v. FBI*,
  Civ. A. No. 18-2791 (CRC), 2023 WL 7182057 (D.D.C. Nov. 1, 2023) ............................. 36

*Hodge v. FBI*,
  703 F.3d 575 (D.C. Cir. 2013) ............................................................................................ 11

*Hughes v. Dep't of Just.*,
  Civ. A. No. 19-3278 (APM), 2022 WL 2528105 (D.D.C. July 7, 2022) .............................. 28

*In re Lindsey*,
  148 F.3d 1100 (D.C. Cir. 1998) .......................................................................................... 30

*Inst. for Energy Rsch. v. FERC*,
  Civ. A. No. 22-3420 (BAH), 2024 WL 551651 (D.D.C. Feb. 12, 2024) ........................ 37-38

*Iturralde v. Comptroller of the Currency*,
  315 F.3d 311 (D.C. Cir. 2003) ............................................................................................ 11

*James Madison Project v. Dep't of Just.*,
  267 F. Supp. 3d 154 (D.D.C. 2017) ..................................................................................... 35

*Jud. Watch, Inc. v. Dep't of Comm.*,
  337 F. Supp. 2d 146 (D.D.C. 2004) ..................................................................................... 24

*Jud. Watch, Inc. v. Dep't of Hous. & Urb. Dev.*,
  20 F. Supp. 3d 247 (D.D.C. 2014) ................................................................................... 28-29

*Jud. Watch, Inc. v. Dep't of Just.*,
  Civ. A. No. 19-0879 (CJN), 2024 WL 1213199 (D.D.C. Mar. 21, 2024) ............................ 28

*Jud. Watch, Inc. v. Dep't of Just.*,
  Civ. A. No. 22-1034 (BAH), 2023 WL 8190820, at *5–7 (D.D.C. Nov. 27, 2023) ........ 14, 16

*Khan v. Dep't of Homeland Sec.*,
  Civ. A. No. 22-2480 (TJK), 2023 WL 6215359 (D.D.C. Sept. 25, 2023) ............................ 36

*Kilmer v. U.S. Customs & Border Prot.*,
  Civ. A. No. 17-1566 (CKK), 2023 WL 7695754 (D.D.C. Nov. 15, 2023) ..................... 21, 32

*Kolbusz v. FBI*,
  Civ. A. No. 17-0319 (EGS/GMH), 2021 WL 1845352 (D.D.C. Feb. 17, 2021) ................. 25

*Kolbusz v. FBI*,

Civ. A. No. 17-0319 (EGS/GMH), 2023 WL 2072481, at *7 (D.D.C. Feb. 17, 2023)  ... 25, 30

*Kowal v. Dep't of Just.*,
    No. 22-5231, 2024 WL 3418844 (D.C. Cir. July 16, 2024) ................... 12, 13, 14, 15, 21, 23

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ............................................................ 10

*Lepelletier v. FDIC*,
    164 F.3d 37 (D.C. Cir. 1999) ............................................................. 17

*Lindsey v. FBI*,
    490 F. Supp. 3d 1 (D.D.C. 2020) ........................................................ 20

*Loving v. Dep't of Def.*,
    550 F.3d 32 (D.C. Cir. 2008) ............................................................. 28

*Mapother v. Dep't of Just.*,
    3 F.3d 1533 (D.C. Cir. 1993) ............................................................ 29

*Maricopa Audubon Soc. v. U.S. Forest Serv.*,
    108 F.3d 1082 (9th Cir. 1997) ........................................................... 37

*Maynard v. CIA*,
    986 F.2d 547 (1st Cir. 1993) ............................................................ 11

*McGehee v. CIA*,
    697 F.2d 1095 (D.C. Cir. 1983) ......................................................... 10

*Media Rsch. Ctr. v. Dep't of Just.*,
    818 F. Supp. 2d 131 (D.D.C. 2011) ................................................... 9, 10

*Michael v. Dep't of Just.*,
    Civ. A. No. 17-0197, 2018 WL 4637358 (D.D.C. Sept. 27, 2018) ........................................ 34

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007) ......................................................... 26

*NARA v. Favish*,
    541 U.S. 157 (2004) ..................................................................... 18

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ..................................................................... 27

*Oglesby v. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) ......................................................... 10, 11

*People for the Am. Way Found. v. Nat'l Park Serv.*,
    503 F. Supp. 2d 284 (D.D.C. 2007) ..................................................... 18

*Perry v. Block*,

    684 F.2d 121 (D.C. Cir. 1982) ......................................................................... 10

*Pinson v. Dep't of Just.*,
    236 F. Supp. 3d 338 (D.D.C. 2017) ................................................................ 34

*Pinson v. Dep't of Just.*,
    243 F. Supp. 3d 74 (D.D.C. 2017) .................................................................. 33

*Poitras v. Dep't of Homeland Sec.*,
    303 F. Supp. 3d 136 (D.D.C. 2018) ................................................................ 36

*Project for Priv. & Surveillance Accountability, Inc. v. Dep't of Just.*,
    Civ. A. No. 21-2362 (RC), 2024 WL 2864191 (D.D.C. June 6, 2024) .......................... 25, 33

*Pub. Emps. for Envt'l Responsibility v. U.S. Section, Int'l Boundary & Water Comm.*,
    740 F. 3d 195 (D.C. Cir. 2014) ...................................................................... 34

*Ramdeo v. Dep't of Just.*,
    Civ. A. No. 19-0114 (ABJ), 2020 WL 1451602 (D.D.C. Mar. 25, 2020) ........................ 13

*Reep v. Dep't of Just.*,
    302 F. Supp. 3d 174 (D.D.C. 2018) ................................................................ 26

*Reporters Comm. for Freedom of the Press v. Customs & Border Prot.*,
    567 F. Supp. 3d 97 (D.D.C. 2021) .................................................................. 30

*Reps. Comm. for Freedom of Press v. FBI*,
    877 F.3d 399 (D.C. Cir. 2017) ...................................................................... 16

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ................................................................. 10, 11

*Salas v. Off. of Inspector Gen.*,
    577 F. Supp. 2d 105 (D.D.C. 2008) ................................................................ 18

*Schmitz v. Dep't of Just.*,
    27 F. Supp. 3d 115 (D.D.C. 2014) ............................................................... 15-16

*Schoenman v. FBI*,
    576 F. Supp. 2d 3 (D.D.C. 2008) .......................................................... 21, 22, 32

*Schwarz v. Dep't of Treasury*,
    131 F. Supp. 2d 142 (D.D.C. 2000) ................................................................ 37

*Shapiro v. Dep't of Just.*,
    34 F. Supp. 3d 89 (D.D.C. 2014) ................................................................... 18

*Shem-Tov v. Dep't of Just.*,
    531 F. Supp. 3d 102 (D.D.C. 2021) ................................................................ 33

*Tax Analysts v. IRS*,

117 F.3d 607 (D.C. Cir. 1997) ............................................................. 30

*Tax Analysts v. IRS*,
294 F.3d 71 (D.C. Cir. 2002) ......................................................... 19, 36

*United States v. Philip Morris, Inc.*,
314 F.3d 612 (D.C. Cir. 2003) ...................................................... 30-31

*United States v. Puzey*,
73 F. App'x 549 (4th Cir. 2003) ............................................... 2, 3, 4, 5

*United States v. Puzey*,
Crim. A. No. 00-0057, 2015 WL 10911976 (N.D.W. Va. Mar. 16, 2015) ......................... 23

*US Inventor, Inc. v. Pat. & Trademark Off.*,
Civ. A. No. 21-2894 (TSC), 2024 WL 663367 (D.D.C. Feb. 16, 2024) ............................... 35

*Whittaker v. Dep't of Just.*,
Civ. A. No. 18-1434 (APM), 2020 WL 6075681 (D.D.C. Oct. 15, 2020) ........................... 33

*Wilderness Workshop v. Dep't of Agric.*,
Civ. A. No. 21-2108 (JMC), 2023 WL 5672578 (D.D.C. Sept. 1, 2023) ........................... 28

*Williams v. Dep't of Just.*,
Civ. A. No. 19-0104 (RBW), 2023 WL 2424738 (D.D.C. Mar. 9, 2023) ...................... 34-35

*Williams v. Dep't of Just.*,
Civ. A. No. 23-0401 (ACR), 2024 WL 2864223 (D.D.C. June 6, 2024) ................. 19, 20, 31

**Statutes**

5 U.S.C. § 552 ........................................... 1, 17, 19, 22, 24, 26, 27, 32, 34

5 U.S.C. § 552a ........................................................... 1, 25, 35

18 U.S.C. § 923 ............................................................... 27

28 U.S.C. § 2255 ............................................................. 7

42 U.S.C. § 1983 ............................................................. 7

**Regulations**

28 C.F.R. § 16.81 ............................................................ 25

28 C.F.R. § 16.96 ............................................................ 16

This case arises from three requests submitted under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, by Michael Paul Puzey ("Plaintiff") to Defendants the Federal Bureau of Investigation ("FBI"), the U.S. Drug Enforcement Administration ("DEA"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")[1], all subcomponents of Defendant the U.S. Department of Justice; and a fourth request sent to the Department of Justice and handled by a fourth subcomponent, Defendant the Executive Office of U.S. Attorneys (the "Executive Office").  The requests sought information related to the criminal prosecution of Plaintiff for conspiracy to distribute cocaine and distribution of cocaine, which resulted in life imprisonment.  *See, e.g.*, Judgment, *United States v. Puzey*, Crim. No. 00-0064 (N.D.W. Va. Oct. 29, 2001), ECF No. 11.

Defendants DEA and ATF completed their searches and found no responsive records. Defendant FBI completed its search and produced responsive records with the exception of material withheld under FOIA Exemptions 6, 7(C), 7(D), and 7(E), 5 U.S.C. §§ 552 (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Defendant Executive Office of U.S. Attorneys completed its search and produced pages, with the exception of material withheld under FOIA Exemptions 3, 5, 6, 7(C), 7(D), 7(E), and 7(F), 5 U.S.C. §§ 552 (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E), (b)(7)(F).  All of FBI's and the Executive Office's productions were exempt from disclosure under the Privacy Act under Privacy Act Exemption (j)(2), 5 U.S.C. § 552a(j)(2).

As supported by this memorandum and accompanying declarations,[2] each Defendant conducted a fulsome search and Defendants FBI and the Executive Office properly withheld

---

[1]    The Complaint mistakenly names this Defendant as "ATE."

[2]    Defendants' motion for summary judgment is accompanied by (1) the Declaration of Susan M. Collins ("Collins Decl."); (2) the Declaration of Joshua Delo ("Delo Decl."); (3) the

exempt information.  Therefore, Defendants' cross-motion for summary judgment should be granted, and Plaintiff's motions (ECF Nos. 58, 63) should be denied.

## BACKGROUND

On December 5, 2000, Plaintiff and others were indicted for numerous crimes related to a conspiracy to distribute crack cocaine.  Indictment, *United States v. Wilt*, Crim. No. 00-0057 (N.D.W. Va. Dec. 5, 2000), ECF No. 1.  Separately, on December 7, 2000, Plaintiff and another individual were indicted for "knowingly us[ing] and carry[ing] three (3) firearms during and in relation to a drug trafficking crime" and for distributing crack cocaine.  Indictment, *United States v. Puzey*, Crim. No. 00-0064 (N.D.W. Va. Dec. 7, 2000), ECF No. 1.  After a jury trial, Plaintiff was found guilty of, among other things, conspiracy to distribute crack cocaine, distribution of crack cocaine, and knowingly using, carrying, and possessing three firearms related to the furtherance of a drug trafficking crime.  *See* Verdict, *Puzey*, Crim. No. 00-0064, *supra*, ECF No. 571; *see also United States v. Puzey*, 73 F. App'x 549, 553 (4th Cir. 2003) ("The probation officer found, based on evidence presented at trial, that Puzey was an organizer/leader of a drug conspiracy involving twenty-five other persons (Puzey's named co-defendants) and that he intimidated and threatened the residents of Fox Glen, dealt crack cocaine from their homes and had the homeowners act as 'runners,' with Puzey receiving the largest share of the proceeds.").  Plaintiff was sentenced to life in prison.  *See* Judgment, *Puzey*, Crim. No. 00-0064, *supra*, ECF No. 11.

In 2021, Plaintiff sent FOIA and Privacy Act requests to DEA, FBI, ATF, and the Department of Justice, respectively.  *See* Compl. Ex. A, ECF No. 1-1 at 2–8.  The request directed

_____

Declaration of Auborn Finney ("Finney Decl."); (4) the Declaration of Hirsh Kravitz ("Kravitz Decl."); and (5) the Declaration of Michael G. Seidel ("Seidel Decl.").

to the Department of Justice sought records related to Plaintiff's criminal case from the "U.S. Attorney's Office: Northern District of West Va." and was therefore forwarded to the Executive Office.  Finney Decl. ¶ 5.  Each request is discussed in turn.

## I.     Plaintiff's Request to the DEA, Dated March 21, 2021

In a letter dated March 21, 2021, Plaintiff made a four-part request for:

(1) The criminal complaint prepared by a[n] Agent with the Drug Enforcement Administration,

(2) the arrest warrant,

(3) all DEA investigative reports,

(4) all grand jury testimony by "any' Drug Enforcement Administration; [and]

(5) all documents, authorization forms pertaining to the Drug Enforcement Administration cross designation of a 'Police officer', "local Agent" and/or "Detective" with the West Virginia State Police Eastern Panhandle Drug and Violent Crimes Task Force.

Compl. Ex. A, ECF No. 1-1 at 3; Delo Decl. ¶ 6.

With respect to the first four subparts of Plaintiff's request, DEA searched the Narcotics and Dangerous Drugs Information Systems database.  Delo Decl. ¶ 7.  That database was most likely to contain the relevant records because it "contains all administrative, general, and investigative files compiled by DEA for law enforcement purposes."  Delo Decl. ¶ 7.  DEA searched that database using Plaintiff's name, social security number, and date of birth in various combinations and using "Micheal" as well as "Michael" because of Plaintiff's certification of identity.  Delo Decl. ¶¶ 9–10.

DEA understood the complaint to clarify that the fifth part of the request referred to Scott Dillion or Scott Dillon.  *See* Delo Decl. ¶¶ 12–13.  DEA informed Plaintiff as such, and Plaintiff did not object.  *See id.*  Thus, DEA searched its Operations Division's Investigative Support System, which "maintains a comprehensive database of authorized deputizations."  *Id.* ¶ 18.

Additionally, DEA searched the Louisville and Washington regional offices "because the two regions served by those offices would be the regions in which any such deputization would have occurred." Delo Decl. ¶ 14. "DEA's query used various spellings of the officer's name—'Scott Dillon,' 'Scott Dillion,' 'Dillon Scott,' and 'Dillion Scott'—as narrowed by the term 'West Virginia State Police.'" *Id.* ¶ 16.

DEA did not identify any responsive documents. *See* Delo Decl. ¶¶ 11, 19–20.

## II.    **Plaintiff's Request to ATF, Dated March 21, 2021**

Plaintiff sent a virtually identical five-part FOIA and Privacy Act request to ATF. The five parts of the request were:

(1) the criminal complaint prepared by a[n] Agent with the ATF,

(2) the arrest warrant,

(3) all ATF investigative reports,

(4) all grand jury testimony by any ATF Agent; [and]

(5) all documents, authorization forms pertaining to the ATF cross designation of a Police Officer, local Agent, and/or "Detective" with the West Virginia State Police Eastern Panhandle Drug and Violent Crimes Task Force.

Compl. Ex. A, ECF No. 1-1 at 4.

ATF received Plaintiff's request on April 15, 2021. *See* Kravitz Decl. ¶ 3. ATF searched the N-Force and Treasury Enforcement Communication System databases and did not locate any records responsive to his request. *See* Kravitz Decl. ¶ 4.

N-Force is an online database which that houses records related to criminal investigations conducted by ATF. *See* Kravitz Decl. ¶ 8 ("N-Force is ATF's official case file of record for documenting investigative activity and information, creating reports, tracking investigative leads and linking data."). An electronic search was conducted on the N-Force database using the search

terms "Puzey" for last name, "Michael" for first name, and "12/26/71" for date of birth.  Kravitz Decl. ¶ 9.

The Treasury Enforcement Communication System database is an online database managed by U.S. Customs and Border Protection which houses records on individuals, including a summary of travel, encounters, and criminal activity. Kravitz Decl. ¶ 10.  ATF searched the Treasury Enforcement Communication System database by Plaintiff's name (first and last).  *Id.* The Treasury Enforcement Communication System search also produced no results.  *Id.*

On April 20, 2021, ATF sent a response informing Plaintiff that ATF had conducted a search of the N-Force and Treasury Enforcement Communication System databases and did not locate any records responsive to his request.  *See* Kravitz Decl. ¶ 4.  Plaintiff appealed and Defendant verified the accuracy of the initial search by searching the N-Force database again.  *See* Kravitz Decl. ¶¶ 5, 11.  No records were found.  *See id.* ¶ 11.

### III.    Plaintiff's Request to the FBI, Dated March 21, 2021

Plaintiff sent a virtually identical five-part FOIA/Privacy Act request to the FBI.  The five parts of the request were:

(1) the Criminal complaint prepared by a[n] Agent with the "FBI",

(2) the arrest warrant,

(3) all FBI investigative reports,

(4) all grand jury testimony by any Federal Bureau of Investigation Agent; [and]

(5) all documents, authorization forms pertaining to the Federal Bureau of Investigation cross designation of a Police officer, local Agent, and/or "Detective with the West Virginia State Police Eastern Panhandle Drug and Violent Crimes Task Force.

Compl. Ex. A, ECF No. 1-1 at 2 (line breaks added); Seidel Decl. ¶ 5.

By letter dated March 31, 2021, the FBI acknowledged Plaintiff's request and informed Plaintiff that unusual circumstances applied to his request. Seidel Decl. ¶ 6. The FBI searched its Central Records System and manual indices through Sentinel, its case management system, for "Puzey, Michael" and "Michael Puzey." Seidel Decl. ¶¶ 16–18, 20, 23–24. The FBI found 100 potentially responsive pages. Seidel Decl. ¶ 4. In August and September 2023, the FBI produced 23 pages in full, 76 pages in part, and withheld one page in full. *See* Seidel Decl. Ex. L; Seidel Decl. ¶¶ 12–14, 29, 31. The FBI applied Exemptions 6, 7(C), 7(D), and 7(E). *See* Seidel Decl. Ex. L; Seidel Decl. ¶ 31.

## IV.    Plaintiff's Request to the Department of Justice, Dated March 21, 2021

On March 31, 2021, the Department of Justice's Mail Referral Unit received a FOIA request from Plaintiff that requested "[a]ll records, documents, and information you have in your file pertaining to me or mentioning my name" and referred to "Criminal Case No: 3:00VR57" and the "U.S. Attorney's Office for the: Northern District of West Va." Finney Decl. ¶ 5. The Mail Referral Unit referred the request to the Executive Office for U.S. Attorneys, who requested that the United States Attorney's Office for the Northern District of West Virginia search for records. Finney Decl. ¶¶ 5–7; Collins Decl. ¶ 6.

A civil division paralegal specialist for the United States Attorney's Office for the Northern District of West Virginia emailed civil and criminal assistant United States attorneys who searched their electronic and physical files for responsive documents using Plaintiff's name. Collins Decl. ¶¶ 1, 11. No other records would be available because the Office did not archive information going back more than five years. *See* Collins Decl. ¶ 12. Additionally, the paralegal specialist searched through physical boxes that had been stored at the National Records Archive Center. Collins Decl. ¶¶ 13–15.

The Executive Office sent Plaintiff productions on November 9, 2023 (re-mailed on December 4, 2023); January 9, 2024; and March 12, 2024.  Finney Decl. ¶¶ 8–10.

## V.    **Plaintiff Files This Lawsuit**

On August 3, 2021, Plaintiff, pro se, filed the instant lawsuit.  *See* Compl., ECF No.1.  In addition to raising claims under FOIA and the Privacy Act, the Complaint appeared to raise a 42 U.S.C. § 1983 claim (Compl. ¶ 1) and to challenge Plaintiff's incarceration (*see* Compl. Prayer for Relief ¶ 3 (requesting the Court "order the U.S. Attorney General . . . to have Plaintiff immediately Released, from this (21) years unlawful arrest and imprisonment")).  On November 15, 2022, Defendants moved to dismiss for lack of subject-matter jurisdiction, improper venue, and insufficient process.  *See* Mot. to Dismiss, ECF No. 29.  With respect to insufficient service of process, Defendants argued that they did not receive a complete copy of the complaint.  Mot. to Dismiss at 2.  With respect to subject-matter jurisdiction, Defendants argued that Plaintiff could not bring a claim against the federal government under 42 U.S.C. § 1983.  *Id.* at 3–4.  Finally, Defendants argued that, to the extent that Plaintiff challenged his conviction, he was required to do so in front of the sentencing court.  *See id.* at 4; 28 U.S.C. § 2255(a) (explaining that motions should be made before "the court which imposed the sentence").

On June 7, 2023, the Court granted Defendant's motion to dismiss Plaintiff's Section 1983 claim and his challenge to his underlying conviction.  *See* July 7, 2023, Min. Order.  The Court "excuse[d] any technical deficiencies in service" because Plaintiff "is incarcerated and proceeding pro se."  *Id.*

On May 17, 2024, Defendants noted that they had completed processing records in response to Plaintiff's requests and further noted that Plaintiff had not raised any objections to Defendants' searches and production.  *See* May 17, 2024, Status Rep., ECF No. 57.

On May 24, 2024, the Court docketed Plaintiff's motion for summary judgment. *See* Pl.'s Mot., ECF 58. In that motion, Plaintiff argued that Defendants should be required to produce certain records that Defendants did not find because, he contended, the existence of those files were necessary preconditions for his conviction more than twenty years prior. *See id.* On June 10, 2024, the Court docketed Plaintiff's response to a previous order to show cause. Plaintiff's response argues that:

- Defendants have failed to "produce[] any evidence" that the documents sought— e.g., "the Complaint, the grand jury transcripts, or the documents authorizing Scott Dillion to act as a federal agent"—exist. Pl.'s Resp. at 6–7, ECF No. 60.

- Defendants cannot assert Privacy Act exemption (j)(2) or (k)(2) because Plaintiff has been "incarcerated twenty-four(24) years, he's not under any [law] enforcement investigations, nor does he seek the disclosure of any informants, nor does he seek the revelation of any investigative techniques." *Id.* at 6.

- Defendants cannot exempt documents under Exemption 6 because "the ATF, DEA, [Executive Office], FBI, and DOJ are not individual person[s] as it relates to personal privacy." *Id.* at 7 (underlining omitted).

Plaintiff also accuses the Bureau of Prisons of deliberately moving him to prevent him from timely filing documents in this case. *Id.* at 7.

On July 11, 2024, the Court docketed Plaintiff's second motion for summary judgment, styled as an "Amended Motion for Summary Judgment." Read liberally, Plaintiff raises two arguments. First, Plaintiff argues that Defendants have violated FOIA because he has not received "the requested documents." Pl.'s 2d Summ. J. at 3. Second, Plaintiff argues he should have received a *Vaughn* index. *See* Pl.'s 2d Summ. J. at 3 (arguing that Defendants have not met their burden because they "fail[ed] to give Puzey a Vaughn Index" (underlining omitted)). Plaintiff's second motion also includes a statement of facts and a purported "Affidavit of Negative Averment." Defendants respond to Plaintiff's statement of facts in their Statement of Facts. This is the second "Affidavit of Negative Averment" that Plaintiff has attempted to file in this case (*see*

Aff., ECF No. 49) and the Court has already correctly held that "[t]he Defendants were not required to respond to [Plaintiff's] affidavit and their failure to respond therefore did not constitute an admission of the affidavit's factual allegations." Order at 1, ECF No. 56. Defendants now respectfully oppose Plaintiff's Motions for Summary Judgment and move for summary judgment in Defendants' favor.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment[.]" *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment." (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009))). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch. Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Agency declarations receive "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).  Upon determining that an agency has released all non-exempt material, the Court has no further judicial function to perform, and the claim is moot.  *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## I.    Defendants Conducted Reasonable Searches

An agency must conduct an adequate search in response to a proper FOIA request.  *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009).  It "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  A reasonable search is one that covers those locations where responsive records are likely to be located.  *Id.*  A search is inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Id.*  "A search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *DiBacco v. U.S. Army*, 795 F.3d 178, 194-95 (D.C. Cir. 2015) (cleaned up).  In other words, "the adequacy of a search is determined not by the fruits of the search, but by the appropriateness of its methods." *Hodge v. FBI*, 703 F.3d 575, 579 (D.C.

Cir. 2013) (cleaned up).  A search is not inadequate merely because it failed to "uncove[r] every document extant."  *SafeCard Servs.*, 926 F.2d at 1201.

The agency bears the burden to demonstrate the adequacy of its search by providing a declaration setting forth the type of search performed and averring that all files likely to contain responsive materials were searched.  *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003).  Such declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  *SafeCard Servs.*, 926 F.2d at 1200 (internal quotation marks omitted).  Once an agency meets its burden to demonstrate the adequacy of its search, its position can be rebutted "only by showing that the agency's search was not made in good faith."  *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993).  Speculative or hypothetical assertions are insufficient to raise a material question of fact as to the search's adequacy.  *Oglesby*, 920 F.2d at 67 n.13.

Each agency has provided declarations setting forth the search performed and explaining why their searches were reasonable and adequate.

### A.    ATF

ATF conducted an adequate search.  ATF searched the systems most likely to have documents responsive to Plaintiff's request: the N-Force and Treasury Enforcement Communication System databases.  *See* Kravitz Decl. ¶¶ 8–10, 12.  The N-Force database "is ATF's official case file of record for documenting investigative activity and information, creating reports, tracking investigative leads and linking data."  Kravitz Decl. ¶ 8.  The Treasury Enforcement Communication System is "a computerized information system designed to identify individuals and businesses suspected of or involved in violation of Federal law" and "a communications system permitting message transmittal between Federal law enforcement offices and other international, state, and local law enforcement agencies."  Kravitz Decl. ¶ 10.  They are

the "two main repositories of ATF investigative records"—i.e., the files sought in Plaintiff's FOIA request.  Kravitz Decl. ¶ 12.  ATF searched for Plaintiff's first name, last name, and date of birth and found no records and then searched the N-Force database a second time and found no records. Kravitz Decl. ¶¶ 9, 11.

This search is reasonably designed to find all responsive records.  *See, e.g.*, *Kowal v. Dep't of Just.*, No. 22-5231, 2024 WL 3418844, at *2 (D.C. Cir. July 16, 2024) (ATF's search adequate when it "searched its N-Force database and Treasury Enforcement Communications System" in response to a request for records related to a criminal defendant's investigation and prosecution).

**B.    DEA**

DEA conducted an adequate search.  With respect to the first four subparts of Plaintiff's request, DEA searched the Narcotics and Dangerous Drugs Information Systems database.  Delo Decl. ¶ 7.  That database was most likely to contain the relevant records because it "contains all administrative, general, and investigative files compiled by DEA for law enforcement purposes." Delo Decl. ¶ 7.  DEA's search terms were reasonable: DEA searched that database using Plaintiff's name, social security number, and date of birth in various combinations and using "Micheal" as well as "Michael" because of Plaintiff's certification of identity.  Delo Decl. ¶¶ 9–10.

With respect to the first four subparts of Plaintiff's request, DEA searched the Narcotics and Dangerous Drugs Information Systems database.  Delo Decl. ¶ 7.  That database was most likely to contain the relevant records because it "contains all administrative, general, and investigative files compiled by DEA for law enforcement purposes."  Delo Decl. ¶ 7.  DEA searched that database using Plaintiff's name, social security number, and date of birth in various combinations and using "Micheal" as well as "Michael" because of Plaintiff's certification of identity.  Delo Decl. ¶¶ 9–10.

With respect to the fifth subpart, DEA understood the complaint to clarify the request to refer to Scott Dillion or Scott Dillon.  *See* Delo Decl. ¶¶ 12–13; *accord* Pl. Stmt. of Facts ¶ 22, ECF No. 63-2 (indicating that Plaintiff was seeking "Cross Deputization of State Trooper Scott Dillion"); Pl.'s 2d Summ. J. at 5, ECF No. 63 (similar).  DEA informed Plaintiff as such, and Plaintiff did not object.  *See id.*  Thus, DEA searched its Operations Division's Investigative Support System, which "maintains a comprehensive database of authorized deputizations."  *Id.* ¶ 18; *see also Ramdeo v. Dep't of Just.*, Civ. A. No. 19-0114 (ABJ), 2020 WL 1451602, at *5 (D.D.C. Mar. 25, 2020) (explaining that defendant's interpretation of Plaintiff's request was reasonable "[b]ased on plaintiff's June 2019 clarifying letter, and the complaint allegations").  Additionally, DEA searched the Louisville and Washington regional offices "because the two regions served by those offices would be the regions in which any such deputization would have occurred."  Delo Decl. ¶ 14.  Again, DEA's search terms were reasonable: "DEA's query used various spellings of the officer's name—'Scott Dillon,' 'Scott Dillion,' 'Dillon Scott,' and 'Dillion Scott'—as narrowed by the term 'West Virginia State Police.'"  *Id.* ¶ 16.

### C.    FBI

FBI conducted an adequate search.  It searched its Central Records System and its manual index using its Sentinel case management system.  Seidel Decl. ¶¶ 17–18, 20–21.  These systems were the most likely to have information because the Central Records System "consist[s] of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI" that "spans the entire FBI organization and encompasses the records of FBIHQ, FBI field offices, and FBI legal attaché offices worldwide."  Seidel Decl. ¶ 17. Courts have repeatedly upheld as adequate the FBI's search of the Central Records System.  *See, e.g.*, *Kowal v. Dep't of Just.*, No. 22-5231, 2024 WL 3418844, at *2 (D.C. Cir. July 16, 2024) (FBI's search adequate when it "searched its Central Records System" in response to a request for records

13

related to a criminal defendant's investigation and prosecution); *Jud. Watch, Inc. v. Dep't of Just.*, Civ. A. No. 22-1034 (BAH), 2023 WL 8190820, at *5–7 (D.D.C. Nov. 27, 2023) (search of Central Records System was adequate).  Because of the age of the material sought, the FBI also engaged in a "Manual indices" search.  Seidel Decl. ¶¶ 24,

The FBI searched for "Puzey, Michael" and "Michael Puzey."  Seidel Decl. ¶ 24.  Those search terms would have found the material sought by Plaintiff.

### D.    The Executive Office

Plaintiff's FOIA request to the Department of Justice requested "[a]ll records, documents, and information you have in your file pertaining to me or mentioning my name" and referred to "Criminal Case No: 3:00VR57" and the "U.S. Attorney's Office for the: Northern District of West Va."  Finney Decl. ¶ 5.

Accordingly, the Department of Justice and the Executive Office for U.S. Attorneys properly read the FOIA request to refer to records related to Plaintiff's criminal case.  *See Kowal v. Dep't of Just.*, No. 22-5231, 2024 WL 3418844, at *3 (D.C. Cir. July 16, 2024) (appropriate to limit search because the requester "specifically requested records pertaining to the federal criminal investigation and prosecution of [the criminal defendant] and detailed his federal charges and criminal proceedings in the subject line of her request").

A paralegal at the identified United States Attorney's Office requested that Assistant United States Attorneys and other staff members search their files and then further obtained the case files from the National Records Archive Center and searched those files.  *See* Collins Decl. ¶ 1, 11–15.  Consistent with Plaintiff's request, the paralegal and Assistant United States Attorneys searched those files for documents containing or referring to Plaintiff.  *See id.* ¶¶ 11, 15.

The Executive Office's search was reasonable.  *See Kowal*, 2024 WL 3418844, at *4 ("Once the agencies found their criminal investigative files pertaining to [the criminal defendant's]

capital case, it was reasonable not to search further."); *Davis v. Exec. Off. for U.S. Att'ys*, Civ. A.
No. 18-0086 (CRC), 2024 WL 2701067, at *2 (D.D.C. Apr. 4, 2024) (search of United States
Attorney's Office and criminal case file from the National Archives and Records Administration
sufficient).

*    *    *

Plaintiff claims that he did not receive "the requested documents."  Pl.'s 2d Summ. J., ECF
No. 63.  As explained in this motion, Plaintiff received the responsive, non-exempt records found
from Defendant's searches.

More specifically, Plaintiff surmises that a criminal complaint and other similar files must
exist and Defendants must possess them.  *See* Pl.'s Summ. J. Mot. at 3–4, ECF No. 58 (arguing
that the FOIA response is insufficient because "there can be no federal conviction without the files
listed"); *accord* Pl.'s Resp. to Mot. to Show Cause at 6, ECF No. 60 ("[T]he Government's failure
to produce these non-exempt items . . . is a violation of the FOIA Act[.]").  That is not enough to
show that a search is inadequate.  *See Schmitz v. Dep't of Just.*, 27 F. Supp. 3d 115, 117–18, 120–
21 (D.D.C. 2014) (holding defendant's affidavit showed that it conducted an adequate search even
though Plaintiff requested her criminal complaint and the defendant did not provide it); *see also,
e.g.*, *Reps. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 408 (D.C. Cir. 2017) ("That a few
responsive documents may have slipped through the cracks does not, without more, call into
question the search's overall adequacy.").

Nor does Plaintiff indicate any other way in which he believes that the search was deficient.
*Cf. Jud. Watch, Inc. v. Dep't of Just.*, Civ. A. No. 22-1034 (BAH), 2023 WL 8190820, at *7
(D.D.C. Nov. 27, 2023) ("Once an agency has conducted a good faith search in response to a FOIA

15

request, the burden is on the requesting party to provide evidence that other databases are reasonably likely to contain responsive documents.").

## II.    The FBI Properly Redacted Certain Information Pursuant to Exemptions to FOIA and the Privacy Act

### A.    Privacy Act Exemption (j)(2)

Privacy Act Exemption (j)(2) permits an agency to promulgate rules exempting from disclosure any system of records maintained by that agency or a component thereof that performs as its principal function any activity pertaining to the enforcement of criminal laws, where such system consists of, in part, information compiled for criminal investigatory purposes and associated with an identifiable individual, including "reports of informants" and investigators.

The FBI has issued a regulation exempting the Central Records System from disclosures under the Privacy Act.  *See* 28 C.F.R. § 16.96(a)(1); 63 Fed. Reg. 8671, 8684 (Feb. 20, 1998); *see also Gatson v. FBI*, Civ. A. No. 15-5068, 2017 WL 3783696, at *7 n.11 (D.N.J. Aug. 31, 2017) ("Under this exemption, the Department of Justice promulgated a rule exempting from disclosure law enforcement records maintained in the FBI's [Central Records System].") *aff'd*, 779 F. App'x 112 (3d Cir. 2019).  The records at issue are law enforcement records because they "were compiled in the course of the FBI's assistance to law enforcement regarding [Plaintiff's] unlawful flight to avoid prosecution" or because they "were compiled as part of a gang related racketeering investigation, an FBI Laboratory examination file, and an investigation into a criminal drug organization."  Seidel Decl. ¶ 27.  Thus, because all potentially responsive records came from the Central Records System and the information was compiled for criminal investigatory purposes, it is exempt from disclosure under exemption (j)(2).  *See Dalal v. Dep't of Just.*, 643 F. Supp. 3d 33, 48 (D.D.C. 2022) ("Here, the FBI records responsive to [plaintiff's] requests all came from

the FBI's Criminal Records System, and the FBI has exempted records maintained in [the system.]" (citations omitted) (citing 28 C.F.R. § 16.96)).

### B.    FOIA Exemption 6

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes "[g]overnment records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *see also Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."). In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy."  *Lepelletier*, 164 F.3d at 46. "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *Id.* at 47 (alterations in original; quoting *Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose[.]"  *Beck v. Dep't of Just.*, 997 F.2d 1489, 1493 (D.C. Cir. 1993).

Importantly, "[t]he privacy interest at stake belongs to the individual, not the agency." *Amuso v. Dep't of Just.*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009); *accord Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 763–65 (1989).  And "the concept of personal privacy . . . is not some limited or 'cramped notion' of that idea," *NARA v. Favish*, 541 U.S. 157, 165–70 (2004) (construing analogous Exemption 7(C)), but rather is grounded in "both the common law

and the literal understandings of privacy [that] encompass the individual's control of information concerning his or her person." *Reps. Comm.*, 489 U.S. at 763.

An individual's privacy interest "is not limited to [personal information] of an embarrassing or intimate nature." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304 (D.D.C. 2007). Under FOIA, any personal privacy interest greater than *de minimis* is "substantial." *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1050 (D.C. Cir. 2009). "Information protected under Exemption 6 includes such items as a person's name, address, place of birth, employment history, and telephone number." *Shapiro v. Dep't of Just.*, 34 F. Supp. 3d 89, 94 (D.D.C. 2014).

The burden is on Plaintiff to establish that disclosure would sufficiently serve the public interest so as to overcome the individuals' privacy interests. *See, e.g.*, *Carter v. Dep't of Com.*, 830 F.2d 388, 391 n.13 (D.C. Cir. 1987); *accord Associated Press v. Dep't of Def.*, 549 F.3d 62, 66 (2d Cir. 2008); *Salas v. Off. of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) ("It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant" (citing *Favish*, 541 U.S. at 172)).

"When an agency invokes both exemptions, as here, courts 'focus' on Exemption 7(C) because it 'establishes a lower bar for withholding material.'" *Groenendal v. Exec. Off. for U.S. Att'ys*, Civ. A. No. 20-1030 (DLF), 2024 WL 1299333, at *9 (D.D.C. Mar. 27, 2024) (quoting *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014)). Exemption 7(C) is discussed below.

The information discussed below is properly withheld under Exemptions 6 and 7(C) because there is no countervailing public interest that would be served by the disclosure of this personal information and release of this personally identifiable information would not shed light

on how the Agency or the Department conducts business.  *See Beck*, 997 F.2d at 1494 (stating that when there is no public interest at all, the court "need not linger over the balance; something . . . outweighs nothing every time" (quoting *Horner*, 879 F.2d at 879) (alteration in original)).

### C.    FOIA Exemption 7(C)

Like Exemption 6, FOIA Exemption 7(C) protects personal privacy when disclosure of "information compiled for law enforcement purposes . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

"Exemption 7(C) applies if the agency meets a two-part test."  *Williams v. Dep't of Just.*, Civ. A. No. 23-0401 (ACR), 2024 WL 2864223, at *4 (D.D.C. June 6, 2024).  "*First*, to invoke *any* subsection of § 552(b)(7), the agency must first satisfy a threshold requirement that the 'records or information' are 'compiled for law enforcement purposes.'"  *Id.* (quoting 5 U.S.C. § 552(b)(7)(C)).  An agency need not link its collection of material to a specific or ongoing investigation.  *Tax Analysts v. IRS*, 294 F.3d 71, 78–79 (D.C. Cir. 2002).

"*Second*, an agency must show that acknowledgment of responsive documents could reasonably be expected to constitute an unwarranted invasion of personal privacy" by weighing "the public interest in the release of information against the privacy interest in nondisclosure." *Williams*, 2024 WL 2864223, at *4 (quoting *People for the Ethical Treatment of Animals v. Nat'l Institutes of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014)) (cleaned up).

The FBI protected the names and identifying information of nine categories of information: (1) FBI Special Agents and professional staff; (2) third-party individuals who were interviewed, and/or provided information by other means, to the FBI during its investigation of Michael Puzey; (3) third parties who were merely mentioned in the investigative records responsive to Plaintiff's request; (4) third parties who were of investigative interest to local law enforcement and the FBI; (5) non-FBI federal government personnel; (6) state and local law enforcement employees;

(7) third parties who have a criminal record with the FBI and/or other state and local law enforcement agencies; (8) third-party victims who were mentioned in the investigative records responsive to Plaintiff's request; and (9) third-party victims who were mentioned in the investigative records responsive to Plaintiff's request.  Seidel Decl. ¶¶ 38, 42, 45, 47–52.

The FBI properly applied Exemption 7(C) over each of the nine types of information.  First, all the information subject to Plaintiff's request was compiled for law enforcement purposes.  "[C]ourts generally afford some deference to agencies specializing in law enforcement that claim their records are eligible for Exemption 7(C) protection."  *Lindsey v. FBI*, 490 F. Supp. 3d 1, 17 (D.D.C. 2020) (quoting *Bartko v. Dep't of Just.*, 898 F.3d 51, 64 (D.C. Cir. 2018)).  Here, the FBI explained that it compiled these records "pursuant to its assistance to law enforcement function"— i.e., "the FBI assisted the Prince George's County Sheriff's Office and the West Virginia State Police in their criminal investigations regarding Michael Puzey."  Seidel Decl. ¶ 33. "[T]the FBI located records regarding Michael Puzey within criminal investigative files concerning gang related racketeering and a criminal drug organization."  *Id.*

Second, for each category, the privacy interest in nondisclosure outweighs the public interest in the release of information.  "Where there is no identifiable public interest, the privacy interest protected by Exemption 7(C) prevails[.]"  *Kowal*, 2024 WL 3418844, at *5.  "Details that 'reveal little or nothing about an agency's own conduct' are not part of the public interest for purposes of Exemption 7(C)."  *Blanton v. Dep't of Just.*, 63 F. Supp. 2d 35, 45 (D.D.C. 1999) (quoting *Davis v. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992)).  Six of the nine categories of information withheld under 7(C)—the second, third, fourth, seventh, eighth, and ninth categories referenced above—consists of the names and identifying information of private citizens.  That information is properly withheld because "the D.C. Circuit applies a 'categorical rule

permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity."'" *Schoenman v. FBI*, 576 F. Supp. 2d 3, 12 (D.D.C. 2008) (quoting *Schrecker v. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003)).  Here, there is no compelling evidence that the FBI is engaged in illegal activity.

Third, of the categories enumerated above, the first, fifth, and seventh consist of lower-level FBI, federal, state law enforcement, and local law enforcement employees.  Similar logic applies.  Bare assertions that the names of government personnel are necessary because such information shows "who was doing what" for the government do not show a public interest. *Schoenman*, 576 F. Supp. 2d at 11.  "It is well settled that law enforcement personnel and government employees have a substantial interest in anonymity." *Kilmer v. U.S. Customs & Border Prot.*, Civ. A. No. 17-1566 (CKK), 2023 WL 7695754, at *11 (D.D.C. Nov. 15, 2023).

To counter that interest, Plaintiff must show that the identity of those individuals reveals details about the agency's conduct.  Thus, "the deletion of the names of federal, state and local law enforcement personnel . . . has been routinely upheld" where a plaintiff offers conclusory assertions that the identity of those personnel may provide more information but that information is "not 'necessary in order to confirm or refute . . . evidence that the agency is engaged in illegal activity.'" *Blanton*, 63 F. Supp. 2d at 46 (citing cases); *accord Schoenman*, 576 F. Supp. 2d at 13 ("[T]he FBI agent's name itself 'reveals little or nothing about an agency's own conduct[] [and therefore does] not further the statutory purpose; thus the public has no cognizable interest in the release of such information.").  Because Plaintiff cannot do so, the information was properly withheld.

Moreover, "[w]hen Exemption 7(C) is invoked . . . , the justifications for non-disclosure generally are also sufficient evidence of foreseeable harm."  *Groenendal*, 2024 WL 1299333, at *10 (quoting *Ball v. U.S. Marshals Serv.*, Civ. A. No. 19-1230, 2021 WL 4860590, at *9 (D.D.C. Oct. 19, 2021)).  Here, the risk of harassment is evident.  *See id.*

### D.    FOIA Exemption 7(D)

FOIA Exemption 7(D) protects from disclosure records or information compiled for law enforcement purposes where disclosure "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis."  5 U.S.C. § 552(b)(7)(D).  "[T]he paramount objective of Exemption 7(D) . . . is to keep open the Government's channels of confidential information."  *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1212 (D.C. Cir. 1986).  To properly invoke Exemption 7(D), an agency must demonstrate that the source provided the information under either an express or an implied promise of confidentiality.  *See Dep't of Just. v. Landano*, 508 U.S. 165, 171–72 (1993).

"[C]ourts consider a number of factors to determine whether the source nonetheless spoke with an understanding that the communication would remain confidential."  *Dalal v. Dep't of Just.*, 643 F. Supp. 3d 33, 72 (D.D.C. 2022) (quoting *Roth v. Dep't of Just.*, 642 F.3d 1161, 1184 (D.C. Cir. 2011)).  "Implied confidentiality analysis proceeds from the perspective of an informant," and an implied promise of confidentiality may be supported by "[t]he character of the crime and the source's relation to it."  *Billington v. Dep't of Just.*, 233 F.3d 581, 585 (D.C. Cir. 2000).

FBI invoked Section 7(D) to protect information "concerning an audio microcassette provided by West Virginia State Police personnel under an implied assurance of confidentiality." Seidel Decl. ¶ 55.  The expectation of confidentiality is implied because the West Virginia State Police would not want to expose its own "confidential source[] who was at the time in proximity

22

to violent criminals." *Id.* ¶ 56. Thus, the character of the crime and the ultimate source's relation to it presume the implied promise of confidentiality. *See, e.g.*, *Kowal*, 2024 WL 3418844, at *6 (implied confidentiality where "the sources provided information about an extensive drug trafficking operation and therefore faced a threat of violent reprisal"); *cf. United States v. Puzey*, Crim. No. 00-0057, 2015 WL 10911976, at *2 (N.D.W. Va. Mar. 16, 2015) ("[Plaintiff] is an exceedingly dangerous individual. He was often in the possession of firearms, fired shots through the roof of a trailer, shot at two persons, dealt in stolen firearms, and threatened a deputy sheriff. He has three prior convictions for carrying a concealed weapon, a battery conviction, and an assault conviction."), *aff'd*, 610 F. App'x 274 (4th Cir. 2015).

The FBI "properly withh[olds] . . . material" under Section 7(D) when it receives information provided by other "law enforcement agencies under an implied assurance of confidentiality" because it could "diminish cooperation between the FBI and other law enforcement authorities." *Canning v. Dep't of Just.*, Civ. A. No. 11-1295(GK), 2017 WL 2438765, at *10 (D.D.C. June 5, 2017).

### E.    FOIA Exemption 7(E)

Exemption 7(E) permits withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)). Generally, techniques and procedures not well-known to the public have been found to be exempt from disclosure under Exemption 7(E). *See, e.g.*, *Jud. Watch, Inc. v. Dep't of Com.*, 337 F. Supp. 2d 146, 181 (D.D.C.

2004) (recognizing exemption's protection for techniques "not well known to the public").  Even records containing commonly known procedures have been protected from disclosure "if the disclosure could reduce or nullify their effectiveness." *CREW v. Dep't of Just.*, 870 F. Supp. 2d 70, 85 (D.D.C. 2012).

Here, the FBI protected certain sensitive investigative information located within standardized FBI FD-515 forms.  *See* Seidel Decl. ¶¶ 61–63.  FD-515s are forms used by FBI personnel to report investigative accomplishments.  *See id.* ¶ 62.  The FBI has redacted "statistical information concerning the assistance of other federal, state, or local law enforcement agencies in the FBI's efforts to locate and arrest Michael Paul Puzey for unlawful flight to avoid prosecution" from the FD-515s.  *Id.*  Courts have upheld the application of Exemption 7(E) over this information in FD-515 forms.  *See, e.g.*, *Curry v. FBI*, Civ. A. No. 18-0439 (EGS), 2024 WL 21466, at *4–5 (D.D.C. Jan. 2, 2024) (upholding the redaction of the "'Assisting Agencies' category'" and citing cases).

When assessing foreseeable harm with respect to 7(E), "the Court looks to much of the same indicia in this analysis as it did when assessing the" application of the exemption.  *Project for Priv. & Surveillance Accountability, Inc. v. Dep't of Just.*, Civ. A. No. 21-2362 (RC), 2024 WL 2864191, at *9 (D.D.C. June 6, 2024).  Therefore, foreseeable harm has been shown here.

## III.    <u>The Executive Office</u>

### A.    **Privacy Act Exemption (j)(2)**

Privacy Act Exemption (j)(2) permits the agency to promulgate rules exempting from disclosure any system of records maintained by the agency or a component thereof that performs as its principal function any activity pertaining to the enforcement of criminal laws, "including . . . the activities of prosecutors."  5 U.S.C.A. § 552a.  The Department of Justice issued regulations

exempting "Criminal Case Files" from disclosure under the Privacy Act. *See* 28 C.F.R. § 16.81(a)(4); *Privacy Act of 1974; Modified System of Records*, 53 Fed. Reg. 1861 (Jan. 22, 1988).

Because all potentially responsive records came from Criminal Case Files and the information was compiled for criminal investigatory purposes, it is exempt from disclosure under exemption (j)(2). *See, e.g.*, *Cullen v. Dep't of Homeland Sec.*, Civ. A. No. 20-0113 (TJK), 2023 WL 5607425, at *9 (D.D.C. Aug. 30, 2023) ("[S]ystems containing 'criminal case files' are exempt from disclosure under the Privacy Act."); *Dalal*, 643 F. Supp. 3d at 48 ("[The Executive Office] has exempted U.S. Attorney's Office criminal case files from disclosure."); *Kolbusz v. FBI*, Civ. A. No. 17-0319 (EGS/GMH), 2021 WL 1845352, at *24 (D.D.C. Feb. 17, 2021) (similar), *R. & R. adopted*, 2023 WL 2072481 (D.D.C. Feb. 17, 2023).

### B.    FOIA Exemption 3

FOIA Exemption 3 exempts from disclosure records when they are "specifically exempted from disclosure by statute . . . if that statute . . . requires that the matter be withheld from the public in such a manner as to leave no discretion on the issue; or . . . (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph. 5 U.S.C. § 552(b)(3); *Reep v. Dep't of Just.*, 302 F. Supp. 3d 174, 183 (D.D.C. 2018), *aff'd*, No. 18-5132, 2018 WL 6721099 (D.C. Cir. Dec. 18, 2018).  Thus, the sole issue for decision "is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007).

Here, the Executive Office properly exempted documents under Exemption 3 based on two statutes.  First, the Executive Office exempted information provided to the grand jury based on the prohibition of disclosure contained in Federal Rule of Criminal Procedure 6(e).  Finney Decl.

¶¶ 13–14.  Federal Rule of Criminal Procedure 6(e) does not allow for the disclosure of "matter[s] occurring before the grand jury" with specified exceptions that do not apply here.

"[R]equests for documents related to grand jury investigations implicate FOIA's third exemption, because Rule 6(e) of the Federal Rules of Criminal Procedure prohibits government attorneys and others from disclos[ing] a matter occurring before the grand jury."  *Clarke v. Dep't of Just.*, Civ. A. No. 18-2192 (ACR), 2023 WL 2536264, at *3 (D.D.C. Mar. 13, 2023) (quoting *Lopez v. Dep't of Just.*, 393 F.3d 1345, 1349 (D.C. Cir. 2005)) (internal quotation marks omitted). Here, the information would pierce the grand jury's cloak of secrecy because the portions withheld "include the names of grand-jury witnesses and the statements they made to the grand jury." Finney Decl. ¶ 14.  Thus, this information was properly withheld.  *See, e.g.*, *Anand v. Dep't of Health & Hum. Servs.*, Civ. A. No. 21-1635 (CKK), 2023 WL 2646815, at *17 (D.D.C. Mar. 27, 2023) ("the substance of what was said to the grand jury[]" and "any references to any particular witnesses who testified before the grand jury" were properly withheld under Exemption 3).

Second, the Executive Office exempted firearms trace information conducted by ATF's National Tracing Center and that were maintained in ATF's Firearms Tracing System database. Finney Decl.  ¶ 16.   Such information is exempt from disclosure under Consolidated Appropriations Act of 2012, Pub. L. No. 112–55, 125 Stat. 552, 609 (2011), *codified at* 18 U.S.C. § 923 note, which states that, "during the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives" except with respect to exceptions that do not apply here.  *See Dale v. DEA*, Civ. A. No. 20-1248 (EGS), 2022 WL 3910502, at *5 (D.D.C.

Aug. 31, 2022) (describing exemption); Finney Decl. ¶¶ 15–19 (similar).  Thus, "this firearms trace information properly is withheld under Exemption 3."  *Dale*, 2022 WL 3910502, at *5.

### C.    FOIA Exemption 5

FOIA Exemption 5 exempts "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" from production under FOIA.  5 U.S.C. § 552(b)(5).  This exemption shields documents that would be privileged in the context of civil discovery, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-process privilege.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  Here, the Executive Office for U.S. Attorneys withheld information under all three civil privileges.

#### 1.    Attorney Work Product

"The work product doctrine 'protect[s] the mental processes and opinions of the drafter of the document in question,' as well as 'factual material that is bound up with the drafter's opinions and recommendations.'"  *Fed. Trade Comm'n v. Match Grp., Inc.*, Misc. No. 22-0054 (RJL/GMH), 2024 WL 1509180, at *13 (D.D.C. Mar. 12, 2024) (quoting *United States v. All Assets Held at Bank Julius Baer & Co.*, 169 F. Supp. 3d 54, 57 (D.D.C. 2015)).

Here, the Executive Office of U.S. Attorneys redacted and withheld "handwritten notes on a pending criminal investigation/prosecution."  Finney Decl. ¶ 23; Exec. Office *Vaughn* Index at 6–8.  Such notes are paradigmatic work product.  *See, e.g.*, *Hughes v. Dep't of Just.*, Civ. A. No. 19-3278 (APM), 2022 WL 2528105, at *4 (D.D.C. July 7, 2022) ("Courts in this District have found similar records to be properly withheld under the attorney-work-product privilege."); *Jud. Watch, Inc. v. Dep't of Just.*, Civ. A. No. 19-0879 (CJN), 2024 WL 1213199, at *2 (D.D.C. Mar. 21, 2024) (assistant U.S. attorneys' handwritten notes were work product).

"[I]n the case of the attorney-client and work-product privileges, 'for which the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated,' an agency may not need to provide as much information to satisfy the foreseeable harm requirement." *Wilderness Workshop v. Dep't of Agric.*, Civ. A. No. 21-2108 (JMC), 2023 WL 5672578, at *9 (D.D.C. Sept. 1, 2023) (quoting *Reports Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021)). Here, the disclosure of this information would cause harm because it :would reveal the government attorney's legal strategies, legal research, legal opinions, and legal impression of the strength or weakness their case." Finney Decl. ¶ 23.

### 2.    Deliberative Process Privilege

The deliberative process privilege is similar in some senses to the attorney-client and attorney work product privileges. It "protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)); *cf. Jud. Watch, Inc. v. Dep't of Hous. & Urb. Dev.*, 20 F. Supp. 3d 247, 256 (D.D.C. 2014) ("While there is some overlap between these privileges, each privilege protects a different interest and requires different 'essential elements.'"). The privilege applies to records that are both "predecisional" and "deliberative." *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). As used in the context of the privilege, "predecisional" material is that "generated before the adoption of agency policy." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Material is "deliberative" if it "reflects the give-and-take of the consultative process." *Id.* The privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective

documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.*

Here, the Executive Office applied this privilege to redact or withhold  an Assistant United States Attorney's handwritten notes on a pending investigation/litigation and memos from a detective to the Assistant United States Attorney.  Finney Decl. ¶ 28.  This information is deliberative because the Assistant United States Attorney and the detective were discussing whether they had enough information to seek warrants.  Finney Decl. ¶ 30.  The information is predecisional because the attorney and detective had not yet decided when (if at all) to seek the warrants.  *See id.*  Therefore, this material is protected under the deliberative process privilege. *See Adionser v. Dep't of Just.*, 811 F. Supp. 2d 284, 297 (D.D.C. 2011) (holding that "handwritten attorney's notes, a warrant affidavit, a property list, a case timeline, and attorney correspondence" were protected under the deliberative process privilege), *aff'd*, No. 11-5093, 2012 WL 5897172 (D.C. Cir. Nov. 5, 2012).  Moreover, here there is foreseeable harm because disclosure would "severely hamper the efficient daily workings of investigating agents and Department of Justice personnel who no longer feel free to seek legal advice or discuss their ideas and strategies in internal communications."  Finney Decl. ¶ 30.

### 3.    Attorney-Client Privilege

Finally, under FOIA Exemption 5, material is exempt from disclosure under FOIA when it consists of "confidential communications from clients to their attorneys made for the purpose of securing legal advice."  *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (citing *In re Sealed Case,* 737 F.2d 94, 98–99 (D.C. Cir. 1984)).  "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *In re Lindsey,* 148 F.3d 1100, 1104 (D.C. Cir. 1998) (per curiam) (quoting *Tax Analysts,* 117 F.3d at 618) (additional citation omitted)*.*

Here, the withheld communications consist of confidential communications from the investigating agency to an assistant United States attorney that seek legal advice and provide information on an ongoing investigation for the purpose of seeking of legal advice.  Finney Decl. ¶ 25.  The information was confidential as between the attorney and the client.  *Id.*  Thus, FOIA Exemption 5 applies.  *See, e.g.*, *Kolbusz v. FBI*, Civ. A. No. 17-0319 (EGS/GMH), 2023 WL 2072481, at *7 (D.D.C. Feb. 17, 2023) (where declarant explained that discussions between investigators and attorneys, were not shared "outside the attorney-client relationship" and were made for securing legal assistance, that was "sufficient to invoke the attorney-client privilege").

In *Reporters Committee for Freedom of the Press v. Customs & Border Protection*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021), the Court held that "an agency's burden under the foreseeable harm requirement" is "more easily met" under the attorney-client privilege than under the deliberative process privilege because "the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated."  *Cf. United States v. Philip Morris, Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003) ("[T]he general injury caused by the breach of the attorney-client privilege and the harm resulting from the disclosure of privileged documents to an adverse party is clear enough."), *overruled in part on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009).  Here, the Executive Office and the investigating agency would be harmed because their frank, privileged discussion related to criminal investigations would be chilled if agency employees knew that that discussion could be disclosed to the subject of the investigation and others.

### D.    FOIA Exemptions 6 and 7(C)

As noted above, Exemptions 6 and 7(C) protect private information.  Pursuant to those Exemptions, the Executive Office redacted "the identities and identifying information of

witnesses, people of interest in a then-ongoing investigation, and the names of detectives/investigating agents and non-public government employees." Finney Decl. ¶ 37.

Courts focus on Exemption 7(C) when conducting this analysis. *See Groenendal*, 2024 WL 1299333, at *9. These records meet the two-part test for protection under Exemption 7(C). *See Williams*, 2024 WL 2864223, at *4 (describing the test).

The records were compiled for law enforcement purposes because there were compiled as part of the investigation of and prosecution of Plaintiff. *See* Finney Decl. ¶ 37; *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) ("[D]ocuments generated in the course of investigating and prosecuting [Plaintiff] . . . easily qualify as 'records or information compiled for law enforcement purposes.'"); *Brown v. FBI*, Civ. A. No. 21-1639 (RBW), 2023 WL 5333210, at *11 (D.D.C. Aug. 18, 2023) (information compiled for law enforcement purposes because "the plaintiff's own purpose for filing this action is rooted in his express interest in criminal investigation records"); *Groenendal*, 2024 WL 1299333, at *9 ("There appears to be no dispute that these records were 'compiled for law enforcement purposes' because they contain identifying information about individuals who provided information or assisted in the prosecution of [Plaintiff].").

Second, the acknowledgment of responsive documents would constitute an unwarranted invasion of personal privacy because the identities of the individuals would "reveal little or nothing about an agency's own conduct." *Blanton*, 63 F. Supp. 2d at 45 (quoting *Davis*, 968 F.2d at 1282). As described above, the D.C. Circuit applies a "categorical rule" permitting an agency to withhold the names and identifying information of private citizens, and government employees also "have a substantial interest in anonymity." *Schoenman*, 576 F. Supp. 2d at 12; *Kilmer*, 2023 WL 7695754, at *11; *see also* Finney Decl. ¶ 38. Plaintiff has not put forward any evidence suggesting that revealing the identity of any of those individuals would confirm or refute any accusation of

illegality. *Blanton*, 63 F. Supp. 2d at 46 (citing cases). As noted above, the Exemption 7(C) showing usually is coextensive with the foreseeable harm showing and the risk of harassment is evident here. Failing to protect the confidential informants would increase the risk of harm to those informants and decrease the willingness of others to serve as confidential informants in the future.

### E.    FOIA Exemption 7(D)

FOIA Exemption 7(D) protects from disclosure records or information compiled for law enforcement purposes where disclosure "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis." 5 U.S.C. § 552(b)(7)(D). In this case, the Executive Office of U.S. Attorneys redacted the names and identifying information of third parties who provided information under an express or implied assurance of confidentiality. *See* Finney Decl. ¶¶ 41–42. As noted above, courts look to the character of the crime to determine whether there was an implied promise of confidentiality. *See Billington*, 233 F.3d at 585 (courts look to "[t]he character of the crime and the source's relation to it"). Here, given that the informants interacted with the criminal defendants, the nature of this drug conspiracy, and the use of firearms, an implied promise of confidentiality can be inferred. *See* Finney Decl. ¶¶ 42–43. Moreover, the documents expressly referred to the informants as "CI (confidential informants)." Finney Decl. ¶ 42. "[N]otations on the face of a withheld document" constitute evidence of a promise of confidentiality. *Shem-Tov v. Dep't of Just.*, 531 F. Supp. 3d 102, 109 (D.D.C. 2021). Thus, Exemption 7(D) was properly applied.

### F.    FOIA Exemption 7(E)

As discussed above, Exemption 7(E) protects records compiled for law enforcement purposes that would disclose law enforcement procedures. In this case, the Executive Office

redacted documents that "show[ed] the type of information collected during an investigation. Finney Decl. ¶ 43. This information was "not well-known to the public" and contained "non-public details concerning the use of publicly known techniques and procedures." *Id.*

The specific documents withheld are a background check, memos from detectives explaining techniques used during investigation, a flowchart created by a detective to show the intricacies of the conspiracy, and the report of property collected. These are the types of materials to which Exemption 7(E) is regularly applied. *See, e.g.*, *Whittaker v. Dep't of Just.*, Civ. A. No. 18-1434 (APM), 2020 WL 6075681 (D.D.C. Oct. 15, 2020) (upholding application of Exemption 7(E) to background checks); *BuzzFeed Inc. v. Dep't of Just.*, Civ. A. No. 19-1977 (EGS), 2023 WL 6847008, at *11 (D.D.C. Oct. 17, 2023) ("strategies for utilization of particular evidence [that] included 'sensitive, non-public strategies for using particular types of evidence gathered during unresolved and current pending murder, kidnapping, violent criminal gangs, and serial killing investigations[]'" were "properly redacted under Exemption 7(E)"); *Pinson v. Dep't of Just.*, 243 F. Supp. 3d 74, 80–81 (D.D.C. 2017) (upholding application of Exemption 7(E) with respect to a "description of the investigation" that included "items seized during the searches").

Because the risks of circumvention are present here, the agency has shown foreseeable harm. *See Project for Priv.*, 2024 WL 2864191, at *9. Therefore, foreseeable harm has been shown here. Accordingly, this information is properly redacted according to Exemption 7(E).

### G.    FOIA Exemption 7(F)

FOIA Exemption 7(F) allows the withholding of law enforcement information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "Disclosure need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices." *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm.*, 740 F. 3d 195, 205 (D.C. Cir. 2014). This exemption has been "invoked to

protect the identities of informants, sources, and law enforcement personnel." *Michael v. Dep't of Just.*, Civ. A. No. 17-0197, 2018 WL 4637358, at *12 (D.D.C. Sept. 27, 2018). "Information withheld pursuant to Exemption 7(F) is also subject to withholding pursuant to Exemptions 6 and 7(C), the difference being that no balancing test is required for protection under Exemption 7(F)." *Garza v. U.S. Marshals Serv.*, Civ. A. No. 16-0976, 2018 WL 4680205, at *17 (D.D.C. Sept. 28, 2018), *aff'd*, No. 18-5311, 2020 WL 768221 (D.C. Cir. Jan. 22, 2020). Exemption 7(F) "is an absolute ban against [the] disclosure of certain information[.]" *ACLU v. Fed. Bureau of Prisons*, Civ. A. No. 20-2320 (RBW), 2022 WL 17250300, at *18 (D.D.C. Nov. 28, 2022) (quoting *Pinson v. Dep't of Just.*, 236 F. Supp. 3d 338, 368 (D.D.C. 2017)).

Here, "there was a reasonable likelihood that a threat of harm could be posed to the individuals who assisted in the course of this investigation and prosecution." Finney Decl. ¶ 47. Accordingly, the Executive Office of U.S. Attorneys withheld information to protect identity of witnesses and government employees. *See Anand v. Dep't of Health & Hum. Servs.*, Civ. A. No. 21-1635 (CKK), 2023 WL 2646815, at *23 (D.D.C. Mar. 27, 2023) (upholding application of 7(F) after threats); *Williams v. Dep't of Just.*, Civ. A. No. 19-0104 (RBW), 2023 WL 2424738, at *5 (D.D.C. Mar. 9, 2023) (upholding application of Exemption 7(F) where disclosure of identity might make individuals "vulnerable to the risks of . . . threats" (internal quotation marks omitted)). Because of the risk of threats and harassment, foreseeable harm has been shown. Thus, Exemption 7(F) applies because the Executive Office "presented a viable 'nexus between disclosure and possible harm.'" *ACLU v. Fed. Bureau of Prisons*, Civ. A. No. 20-2320 (RBW), 2022 WL 17250300, at *19 (D.D.C. Nov. 28, 2022).

## IV.     **Plaintiff's Arguments About Exemptions Are Meritless**

Plaintiff argues that none of the records at issue are exempt under the Privacy Act. *See* Pl.'s 2d Summ. J. at 3–4 ("None of the requested documents fall under §552a(j)[.]"). Plaintiff

offers no explanation for his conclusion.  As discussed above, they all fall under Privacy Act Exemption (j)(2).

Plaintiff seemingly argues that Defendants' productions are incomplete because he seeks specific documents that were not included in the productions.  *See* Pl.'s Stmt. of Facts ¶ 17, ECF No. 63-2 ("At no time in Affiant's FOIA / PA request, to date, did Defendants produce any of the requested documents requested by Affiant since initial requested date, March 21, 2021.").  But Plaintiff does not offer any challenge to the reasonableness of Defendants' search or anything more than speculation that the Defendants currently have possession of those documents.  *See, e.g.*, *US Inventor, Inc. v. Pat. & Trademark Off.*, Civ. A. No. 21-2894 (TSC), 2024 WL 663367, at *6 (D.D.C. Feb. 16, 2024) ("[M]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them."); *James Madison Project v. Dep't of Just.*, 267 F. Supp. 3d 154, 160 (D.D.C. 2017) ("An agency need not show that it 'actually uncovered every document extant.'").  As discussed above, Defendants produced all non-exempt records found after a reasonable search.  *See* Kravitz Decl. ¶¶ 9, 11; Delo Decl. ¶¶ 11, 19–20; Seidel Decl. Ex. L; Seidel Decl. ¶¶ 12–14, 29, 31; Finney Decl. ¶¶ 8–10.

Plaintiff suggests that the application of the exemptions is inappropriate because "he's not under any [law] enforcement investigations."  Pl.'s Resp. to Mot. to Show Cause at 6, ECF No. 60. Assuming Plaintiff's argument is true, it is irrelevant.  Whether or not an investigation is ongoing is a factor relevant to Exemption 7(A), which no Department of Justice component asserted here. *See Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 157 (D.D.C. 2018) ("[T]o justify withholdings under Exemption 7(A), the agency must demonstrate that disclosure of the materials '(1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'" (quoting *CREW*, 746 F.3d at 1096)); *Tax Analysts v. IRS*, 294

F.3d 71, 78 (D.C. Cir. 2002) (materials that "do[] not relate to any ongoing 'investigation'" still "clearly satisfy the 'law enforcement purposes' threshold of Exemption 7"); *Guarascio v. FBI*, Civ. A. No. 18-2791 (CRC), 2023 WL 7182057, at *9 (D.D.C. Nov. 1, 2023) ("[C]ontrary to [Plaintiff's] suggestions, these privacy interests do not diminish with the passage of time since the investigation wrapped up[.]" (citations omitted)).

Plaintiff also argues that exemptions do not apply because "he [does not] seek the disclosure of any informants, nor does he seek the revelation of any investigative techniques." Pl.'s Resp. to Mot. to Show Cause at 6, ECF No. 60. "But 'a requester's motive is irrelevant to the ultimate inquiry in a FOIA case: whether the agency properly withheld records.'" *Khan v. Dep't of Homeland Sec.*, Civ. A. No. 22-2480 (TJK), 2023 WL 6215359, at *9 (D.D.C. Sept. 25, 2023) (quoting *Montgomery v. IRS*, 292 F. Supp. 3d 391, 396 (D.D.C. 2018)). Even if Plaintiff did not want to disclose exempt information, the Executive Office and the FBI must still protect that information because "FOIA does not permit selective disclosure of information only to certain parties, and that once the information is disclosed to [the requester], it must also be made available to all members of the public who request it." *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082, 1088 (9th Cir. 1997).

Plaintiff also argues that Exemptions 6 and 7(C) cannot be applied because "the ATF, DEA, [the Executive Office], FBI, and [the Department of Justice] are not individual person[s]." Pl.'s Resp. at 7. Plaintiff's argument is inapplicable here where the FBI did not redact the names of agencies. Instead, the exemption was applied to protect the personal information of individual employees and other individuals named in files compiled for law enforcement purposes.

Finally, Plaintiff argues that Defendants were required to provide a *Vaughn* index. Pl.'s 2d Summ. J. at 3–4. FOIA requesters do not enjoy a free-standing right to a Vaughn index on

demand. *See Schwarz v. Dep't of Treasury*, 131 F. Supp. 2d 142, 147 (D.D.C. 2000) ("[T]here is no requirement that an agency provide a . . . 'Vaughn' index on an initial request for documents. The requirement for detailed declarations and Vaughn indices is imposed in connection with a motion for summary judgment filed by a defendant in a civil action pending in court." (footnote omitted)), *aff'd*, No. 00-5453, 2001 WL 674636 (D.C. Cir. May 10, 2001). In any event, indices are supplied with this motion.

## V. <u>Segregability</u>

The agency is entitled "'to a presumption that [it] complied with the obligation to disclose reasonably segregable material,' which can be overcome only with some 'quantum of evidence.'" *Citizens United v. Dep't of State*, Civ. A. No. 18-1862 (RDM), 2021 WL 3268385, at *8 (D.D.C. July 29, 2021) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)).

To obtain that presumption, "[a]ffidavits attesting to the agency's 'line-by-line review of each document withheld in full' and the agency's determination 'that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions,' in conjunction with a *Vaughn* index describing the withheld record, suffice." *Inst. for Energy Rsch. v. FERC*, Civ. A. No. 22-3420 (BAH), 2024 WL 551651, at *13 (D.D.C. Feb. 12, 2024) (quoting *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002)).

It is clear from the FBI's and the Executive Office's reviews and its attestation of a line-by-line review that segregable information has been released. *See* Seidel Decl. ¶ 65; Finney Decl. ¶¶ 41–43. Plaintiff has not brought forward the "quantum of evidence" to overcome the presumption.

*        *        *

## CONCLUSION

For these reasons, Defendants' cross-motion for summary judgment should be granted and Plaintiff's motions for summary judgment should be denied.

Dated: July 29, 2024                      Respectfully submitted,

                                          MATTHEW M. GRAVES, D.C. Bar #481052
                                          United States Attorney

                                          BRIAN P. HUDAK
                                          Chief, Civil Division


                                          By:      /s/ Brian J. Levy
                                             BRIAN J. LEVY
                                             Assistant United States Attorney
                                             601 D Street, NW
                                             Washington, DC 20530
                                             (202) 252-6734

                                          *Attorneys for the United States of America*